Dean S. JOHNSTON, et al.,
Plaintiffs-Respondents,

v.

FIRST NATIONAL BANK AND TRUST
COMPANY OF JOPLIN,
Defendant-Appellant.

No. 12153.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 2, 1981.

PREWITT, Judge.

Plaintiffs,[1] each under a separate written lease with defendant, are or were tenants at the Northpark Mall in Joplin. At issue is an increase in rent sought by defendant pursuant to a Consumer Price Index provision in each of the leases. Plaintiffs brought this declaratory judgment action, contending that the provision under which defendant sought the increased rent was unenforceable because it was indefinite. The trial court found that the provision was unenforceable because it did not state which category of the Consumer Price Index was to be used as a basis for the rental increase. Judgment was entered in favor of plaintiffs. The provisions in the leases providing for rent that are relevant here state:

"ARTICLE IV. RENT, ITS DETERMINATION AND METHOD OF PAYMENT.

SECTION 4.1 *The Rent, Fixed Minimum and Percentage.*

Tenant agrees to pay rent to Landlord, without any prior demand therefor and without any setoff or deduction whatsoever, at the address of Landlord or such place as Landlord may by notice in writing to Tenant from time to time direct, at the following rates and times:

(a) The Fixed Minimum Rent payable in monthly installments in advance on the first day of each calendar month included in the Lease Term, equal for each full month; and for any portion of a calendar month included at the beginning of said term, one thirtieth of such a monthly payment for each day of such portion, payable on the first day of such portion; and

(b) Percentage Rent for each Lease Year or Partial Lease Year, as hereinafter defined, included in the Lease Term, payable as hereinafter provided, equal to the amount, if any, by which the Tenant's Gross Sales (as hereinafter defined) transacted during such Lease Year or

Thad C. McCanse, Flanigan & McCanse, Carthage, for plaintiffs-respondents.

Herbert Kassner, New York City, Ronald E. Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendant-appellant.

1. Nine plaintiffs instituted this action. Prior to trial six of those reached a settlement with defendant and are no longer parties. In this opinion, when we refer to plaintiffs, we mean the three remaining plaintiffs.

Partial Lease Year, multiplied by the Percentage Rent Rate, shall exceed the Fixed Minimum Rent payable for the same period, or as otherwise specified in Section 1.1(g) hereof.

In the event that Tenant's Gross Sales, as defined in SECTION 4.3, shall produce no Sufficient Percentage Rent, hereinafter defined, for any Lease Year during the term hereof, or any extension of said term, then and in such event, at the expiration of said year period (and again, at the expiration of any one or more subsequent year periods within which no such Sufficient Percentage Rent shall have been paid to Landlord), the Fixed Minimum Rent herein provided for shall be adjusted by any percentage increase from the base period of the United States Department of Labor Statistics Consumer Price Index (U.S. City average). The term 'base period' shall refer to the period for which said Index is published which includes the commencement date of this Lease. 'Sufficient Percentage Rent' as used herein is defined as such Percentage Rent which, when added to the then Fixed Minimum Rent equals or exceeds such Fixed Minimum Rent when adjusted to the aforesaid Index."

"Lease year" is defined in the lease to be twelve consecutive calendar months commencing on the first day of January following the commencement day of the lease and each succeeding year commencing on January 1st.

Two of the plaintiffs took possession of their leased premises in 1972 and the other took possession in 1974. Although there was "no Sufficient Percentage Rent" for any of the lease years since the tenants located at the premises, and the Consumer Price Index increased over those years, defendant billed plaintiffs for the amount of the fixed minimum annual rent set forth in the lease until November of 1978, when it billed plaintiffs at an increased rate for 1977 and all other prior years. Two of the plaintiffs refused to pay the increases. Plaintiff Vogel Mills Manufacturing, Inc. informed appellant that charging it "back"

rent was "unfair" but paid the rent both for past and future periods. Its lease has now expired.

▪▪▪ We believe that plaintiff Vogel Mills Manufacturing, Inc., having acquiesced in defendant's claim for the increases and having paid them, is bound by that decision and judgment in its favor was incorrectly entered. Where an agreement is ambiguous the construction placed on it by the parties as evidenced by their acts or conduct will generally be adopted by the court. *Maschoff v. Koedding*, 439 S.W.2d 234, 237 (Mo.App.1969). An interpretation placed on a contract by the parties prior to the time it became a matter of controversy is entitled to great, if not controlling, influence in ascertaining the intent and understanding of the parties and the courts will generally follow such construction. *South Side Realty Co. v. Hamblin*, 387 S.W.2d 224, 229 (Mo.App.1964). See also *Seattle-First National Bank v. Earl*, 17 Wash.App. 830, 565 P.2d 1215, 1220 (1977).

We now consider the issues as to the two remaining plaintiffs. Defendant contends that the language in the Consumer Price Index provision was sufficient for the court to determine the intentions of the parties; but if not, that the parties failed to have a meeting of the minds on an "essential element" of the lease, and that it should be cancelled.

▪▪▪ We try to give meaning to all terms and wording in an agreement, *Jenkins v. John Taylor Dry Goods Co.*, 352 Mo. 660, 179 S.W.2d 54, 58 (1944); 17 Am.Jur.2d, Contracts, § 259; 51C C.J.S. Landlord & Tenant § 232(5), p. 596; but cannot make indefinite parts of a contract definite where there is no showing that a definite intention was present. A court should not under the guise of construing a contract write provisions into it when the record fails to show what the parties actually intended or fails even to furnish a basis for determining by some rule of implication or construction what the parties must have intended or will be held to have intended as reasonable persons acting in good faith. *Kaiser Aluminum & Chemical Corporation v. United States*, 181 Ct.Cl. 902, 388 F.2d 317, 329

(1967). A court can make indefinite parts of a contract definite only when the intention of the parties can be determined by the language of the contract or from surrounding facts and circumstances which manifest a definite intention in reference to such part of the contract. *Dallas Hotel Co. v. McCue*, 25 S.W.2d 902, 906 (Tex.Civ.App. 1930). See also *Gray v. Commodity Credit Corporation*, 63 F.Supp. 386, 392 (S.D.Calif. 1945) affirmed 159 F.2d 243 (9th Cir. 1947).

■ Previous to entering into the lease there were no negotiations or discussions between the parties as to how an increase in the Consumer Price Index would be transformed into an increase in the minimum rent. Nor after the lease was signed was there any acquiescence or agreement by these plaintiffs regarding the method of computing the claimed increase.

The Consumer Price Index, U.S. City average, is determined monthly. The Consumer Price Index, U.S. City average, in evidence, contains separate "All Items" categories for "all urban consumers" and "wage earners and clerical workers". It also contains separate categories for food and beverages, housing, apparel and upkeep, transportation, medical care, entertainment, and "other goods and services". The lease provisions do not indicate which category should apply.

Even if we assume that the "all items" category for "all urban consumers", is as appellant urges, the only one that will "make sense", the calculation is still subject to several choices. Should the increase apply to only the immediate past year in which there has been "no Sufficient Percentage Rent" or should only the next year's rent "be adjusted" or should both be? We might decide this question by determining it against the landlord, who drafted the provision, as was done in *Estwin Corporation v. Prescription Center Pharmacy, Inc.*, 93 Nev. 251, 563 P.2d 78, 87 A.L.R.3d 983 (1977), and apply the increase only to the future fixed minimum rent. See also Annot., Lease Provisions Providing for Rent Adjustment Based on Event or Formula Outside Control of Parties, 87 A.L.R.3d 986, 995 (1978).

However, there are other difficulties here. The leases denote the month of the base period, but do not provide what later Consumer Price Index figures should be used to determine the increase. It could be the first month of a year, each separate month of the year, the last month of the year, the first month of the next year or the average increase over a year. Appellant's interpretation was to use the all items—all urban consumers category and, after the year's end, take the first month of the succeeding year and compare that to the base month. Appellant then increased the rate for the immediate past year and computed a new monthly fixed minimum rent rate based on that increase for the next year. While this is one of several possible constructions, there was no indication that this was how the parties intended to apply this provision or that the remaining plaintiffs acquiesced in such a method of computation.

The wording here does not provide a situation where one of two constructions must have been intended by the parties. There are multiple choices. Nor is it a situation where the agreement can be most favorably construed against the drafting party as there is no way to tell from year to year what may be most favorable because of fluctuations in the various months and categories of the Consumer Price Index.

■ The record does not show that the unknown terms were agreed upon. A court cannot supply terms not agreed upon by the parties. *Temple v. Clinton Trust Co.*, 1 N.J. 219, 62 A.2d 690, 693 (1948). The aid of courts may be invoked if, through imperfect expression, there is a doubt as to the intentions of the parties, but the courts have no right to make a new contract. *New Harmony Realty Corp. v. Superior Oil Co.*, 108 Ind.App. 668, 31 N.E.2d 673, 677 (1941); *Florida Sportservice, Inc. v. City of Miami*, 121 So.2d 450, 453 (Fla.App.1960). Courts cannot make a contract for the parties that they did not make for themselves, or impose upon the parties an obligation not assumed. *Seattle-First National Bank v. Earl*, supra, 565 P.2d at 1218.

Any method of determining an increase in rent under the Consumer Price Index provision that we declare to be proper would create obligations upon the parties that were not agreed to nor necessarily implied from the language in the lease or from the parties' conduct. It would be pure speculation whether such method was intended by any party, by the language of the lease, or whether the parties would have agreed to such a method had they considered it. We hold that the provision regarding the Consumer Price Index is ineffective and that the rent cannot be increased based on that provision.

We next consider whether this determination requires that the remaining two leases be rescinded or cancelled. Appellant is correct that in order to make a valid contract the minds of the parties must meet, and its essential terms must be certain or capable of being certain. *Brandt v. Beebe*, 332 S.W.2d 463, 466 (Mo.App.1959). See also *Burger v. City of Springfield*, 323 S.W.2d 777, 783 (Mo.1959), *Damon Alarm Corp. v. Economic Development Corp.*, 555 S.W.2d 694, 695 (Mo.App.1977). Appellant contends that the rental provisions are an essential part of a lease. Even so, the disputed portion here was only a part of rental provisions. That portion would not appear to be essential to the lease. There are two contingencies that must occur before it applies, "no Sufficient Percentage Rent" and an increase in the Consumer Price Index. The percentage rent could reflect an increase in the cost of goods due to inflation, and other provisions of the leases would pass at least a part of the increase in appellant's expenses at the Mall to the tenants.

Based on appellant's proposed construction of the Consumer Price Index provision, there would be an increased rent for every year after the leases were entered into. However, it was not until 1978 that appellant asked for these increases. This is at least some indication that it did not consider this provision to be essential to the lease. Appellant's counsel contends that "rampant inflation" did not occur for the first few years of the lease and the landlord "overlooked" the collection of the increases until inflation became more significant. Economic conditions may have made a valid Consumer Price Index provision more desirable in a lease, but that does not establish that it was essential when the lease was entered into.

In *Seattle-First National Bank v. Earl*, supra, a lease provided for a rental increase based on the cost-of-living index for the city of Spokane. No such index existed. The court held that no increase could be made until such an index did exist but refused to "invoke its equitable powers to aid one who was the sole cause of the misfortune" and rescind the lease. 565 P.2d at 1220. We believe that the reasoning of that decision is applicable here.

We hold that the trial court was correct in not rescinding the leases.

We are authorized to give such judgment as the trial court should have given. Rule 84.14. The judgment is modified as to plaintiff Vogel Mills Manufacturing, Inc. so that the judgment is in favor of defendant as to Vogel Mills Manufacturing, Inc.'s claim, and in all other respects the judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.

FLANIGAN, J., disqualified.