**James Leroy HOUSLEY,
Plaintiff/Appellant/Respondent,**

v.

**Judi MERICLE, d/b/a Village West Mobile Home Sales, and Annabelle Enterprises, L.L.C., Defendants/Respondents/Cross–Appellants.**

**Nos. 23835, 23850.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 15, 2001.

Eric M. Belk, Eric M. Belk, P.C., Springfield, MO, for Appellant.

Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, MO, for Respondents/Cross–Appellants.

JAMES K. PREWITT, Judge.

Plaintiff sought the recovery of $5,000.00, given as a down payment for the purchase of a mobile home. Defendants answered and counter-claimed, seeking attorney fees pursuant to the agreement for purchase of the mobile home. Following non-jury trial, judgment was entered denying Plaintiff the relief sought and awarding Defendant Annabelle Enterprises, L.L.C.

$2,500.00 for attorney fees. Plaintiff appeals, contending that the trial court erred in not ordering the return of his deposit, and Defendants appeal, contending that the amount ordered for attorney fees was inadequate.

On September 26, 1998, Plaintiff entered into an agreement with Annabelle Enterprises, L.L.C., d/b/a Village West Mobile Home Sales ("Dealer"), whereby he contracted to purchase a mobile home for $50,000.00. Plaintiff tendered a down payment of $5,000.00 at that time.

The agreement listed several contingencies. One such contingency provided that "[a]ll paperwork must be completed in full before home can be delivered." Another stated: "This deal is contingent upon the Dealer's ability to obtain financing for the customer or his/her representative. If financing cannot be obtained, the downpayment will be refunded promptly. When financing is obtained, downpayment becomes non-refundable."

Provided as a part of the "Additional Terms and Conditions" in the parties' agreement, was a clause entitled "IF NOT A CASH TRANSACTION," whereby the purchaser agreed to "enter into a retail installment contract and sign a security agreement or other agreement as may be required to finance" the purchase. Another condition, "FAILURE TO COMPLETE PURCHASE," provided that if purchaser failed or refused to complete the purchase, "for any reason (other than cancellation because of any increase in price), [Dealer] may keep that portion of [the] cash deposit which will adequately compensate [Dealer] for [its] consequential damages, incidental damages, and all other damages, expenses, or losses which [it] incurs because [purchaser] failed to complete" the purchase. Contained in the same clause, however, is the provision that the agreement "shall not be interpreted as containing a 'liquidated damages' provision."

On September 28, 1998, the Dealer notified Plaintiff that financing for his purchase of the manufactured home had been approved through Greenpoint Credit Corporation. Plaintiff was further informed that he would be required to obtain an insurance binder before the financing would be approved and the home delivered, and that additional documents needed his signature before the home could be delivered to his address in Arkansas. At or about this time, Plaintiff said he also learned that the interest rate for the financing would be 8.83%, instead of the 8% to which he had originally agreed.

Plaintiff requested a refund of the $5,000.00 down payment on September 29, 1998, alleging he could not obtain the insurance binder in the State of Arkansas until the home "was set up and tied down." Dealer refused to refund the down payment and Plaintiff brought this action to recover the same. Dealer counterclaimed to recover attorney fees and costs, as provided in the agreement.

At trial, Plaintiff testified that at the time he executed the original sales agreement he had not been informed that an insurance binder would be required. Further, Plaintiff testified that he was contacted by the Dealer and she told him that she could not "finish the paperwork until [he] obtained insurance." He stated that he learned of the increase in the interest rate he would be charged for the financing through a telephone conversation with a representative from the financing company. In addition, he stated he had not seen the retail installment agreement until a short time prior to trial and that he had never executed the same.

The trial court found that Dealer "did secure financing for plaintiff as required by the contract," and Plaintiff was not

entitled to recover his down payment. The judgment also stated that "Plaintiff does not contest defendants' evidence that defendants had in fact obtained financing for plaintiff's purchase.... Plaintiff offered no evidence other than his testimony that he could not obtain the insurance. Plaintiff's only reason for not obtaining insurance was that the trailer had not been delivered." Plaintiff contends in his point relied on that the trial court's judgment was erroneously "predicated upon the legal conclusion" that the original sales agreement which Plaintiff executed contained a contingency requiring an insurance binder in order to obtain financing. Plaintiff further asserts that as the retail installment agreement was not incorporated as a part of the original document he executed and that the terms therein were "materially different than those within the original contract executed by the parties," he was not obligated to accept the additional terms imposed upon him by the retail installment agreement and was entitled to a refund of his down payment.

The original sales agreement was signed by Plaintiff and Dealer. On page two of the agreement, under ADDITIONAL TERMS AND CONDITIONS, is the only provision in this document relating to insurance: "INSURANCE. I understand that I am not covered by Insurance on the unit purchased until accepted by an insurance company, and I agree to hold you harmless from any and all charges due to loss or damage prior to acceptance of insurance coverage by an insurance company."

■ As this case was tried without a jury, our review is governed by Rule 84.13(d), formerly Rule 73.01(c) and the interpretation of Rule 73.01(c) as set forth in *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). An appellate court must defer to trial court's superior ability to judge credibility of witnesses. *Whittom v. Alexander–Richardson Partnership*, 916 S.W.2d 333, 334 (Mo.App. 1995).

■ The interpretation of a contract is a question of law. *Boatmen's Trust Co. v. Long*, 16 S.W.3d 662, 665 (Mo.App.2000). Missouri law implies a covenant of good faith and fair dealing in every contract. *Home Shopping Club, Inc. v. Roberts Broadcasting Co.*, 989 S.W.2d 174, 179 (Mo.App.1998). There is a promise implied in every contract not to prevent or hinder performance by the other party and a breach of this implied promise constitutes a breach of contract. *Robinson v. Powers*, 777 S.W.2d 675, 681 (Mo.App. 1989). The party claiming a breach of the implied covenant of good faith and fair dealing must present substantial evidence of the lack of good faith and fair dealing. *Envtl. Protection, Inspection & Consulting, Inc. v. City of Kansas City*, 37 S.W.3d 360, 366 (Mo.App.2001).

■ " 'An interpretation placed on a contract by the parties prior to the time it became a matter of controversy is entitled to great, if not controlling, influence in ascertaining the intent and understanding of the parties and the courts will generally follow such construction.' " *Wintermute v. Delgado*, 919 S.W.2d 248, 250 (Mo.App. 1996) (quoting *Johnston v. First Nat'l Bank & Trust Co. of Joplin*, 624 S.W.2d 500, 502 (Mo.App.1981)). "The practical construction which the parties themselves place on the [a]greement is of considerable significance in determining the meaning of the terms of the contract." *Whitman's Candies, Inc. v. Pet Inc.*, 974 S.W.2d 519, 529 (Mo.App.1998).

Besides the express language of the agreement which Plaintiff signed, there is legal authority supporting his contention that if financing is not obtained then he is

entitled to the return of his deposit. *See Walker Mobile Home Sales, Inc. v. Walker,* 965 S.W.2d 271 (Mo.App.1998); *Shepard v. Calloway,* 441 So.2d 488 (La.App. 1983).

■ A manufactured home is considered personal property until converted to real property, pursuant to § 700.111, RSMo 1994. *In the Estate of Parker,* 25 S.W.3d 611, 615–16 (Mo.App.2000). Mobile homes, prefabricated buildings or modular homes have been held to constitute a sale of goods, covered by the Uniform Commercial Code. 77A C.J.S. *Sales,* § 12 (1994).

■ In real estate sales contracts with a financing contingency clause, there is an implied obligation on the part of the buyer to use reasonable efforts in pursuing financing. *See Warstler v. Cibrian,* 859 S.W.2d 162, 164 (Mo.App.1993); *Grand & St. Louis Enterprises v. Powell,* 807 S.W.2d 129, 130 (Mo.App.1991); *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 178 (Mo.App.1984); *Alice Blake, Inc. v. Hoffman,* 620 S.W.2d 20, 22 (Mo.App. 1981).

■ We believe that the above rule for real estate contracts would be applicable here, although the party with the obligation to obtain financing was the Dealer. However, they did obtain financing subject to Plaintiff obtaining insurance. Plaintiff argued that he was not obligated to obtain insurance, but we think it is unrealistic for anyone to believe a creditor would finance $45,000.00 of the purchase price without requiring the purchaser to obtain insurance to protect the creditor's loan. In addition, Plaintiff apparently realized this was his obligation, as he testified he attempted to obtain insurance but could not even get an insurance binder until the mobile home was delivered. It is apparent from the trial court's judgment that it did not believe Plaintiff.

The trial court did not find that the retail installment contract imposed terms materially different than those in the original contract, including the rate of interest, which was in dispute.

We conclude that the contentions in Plaintiff's appeal must be denied.

■ We turn now to Defendants' appeal in which they contend that the attorney fees awarded were inadequate. The setting of attorney fees is within the sound discretion of the trial judge, who is considered an expert on the matter of attorney fees. *Evans v. Werle,* 31 S.W.3d 489, 493 (Mo.App.2000); *Architectural Resources, Inc. v. Rakey,* 912 S.W.2d 676, 681 (Mo.App.1995). We find no abuse of discretion in regard to the amount of attorney fees awarded. The contentions in Defendants' appeal are denied.

The judgment is affirmed.

GARRISON, P.J., and PARRISH, J., concur.