**STATE of Missouri, Respondent,**

v.

**Jeffrey THURMAN, Appellant.**

**Jeffrey L. THURMAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 49568, WD 46434.**

Missouri Court of Appeals,
Western District.

Nov. 8, 1994.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

ELLIS, Judge.

In *State v. Thurman*, 887 S.W.2d 403 (Mo. App.1994), this court remanded Jeffrey Thurman's direct appeal with instructions that the trial court hold a hearing to determine, in accordance with *State v. Parker*, 836 S.W.2d 930 (Mo. banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), whether the State exercised its peremptory strikes in a racially discriminatory manner. Although *Parker* was decided some six months after Thurman's trial concluded, we held that *Parker* should be applied retroactively to cases which, like Thurman's, were not yet final or were pending on appeal at the time *Parker* was decided, and remanded for a hearing consistent with *Parker* so the trial court could determine whether the prosecution's use of a peremptory strike to remove black venireperson Roosevelt Figures was racially motivated. *Thurman*, 887 S.W.2d at 408. We affirmed the judgment of the trial court in all other respects, and also affirmed the motion court's denial of post-conviction relief under Rule 29.15. *Id.* at 410–11.

In compliance with our mandate, the trial court conducted an evidentiary hearing during which the lead prosecutor in Thurman's case articulated her reasons for striking Figures. After the hearing, the trial court entered an order overruling Thurman's *Batson* objection[1] to the State's use of its peremptory strikes, finding that the State furnished sufficient race-neutral, non-pretextual reasons for striking Figures from the panel. A record of the hearing and a copy of the trial court's order were certified to this court, also pursuant to our mandate. *See Thurman*, 887

S.W.2d at 410. Thurman once again appeals, claiming that the trial court erred in overruling his objection to the prosecution's use of a peremptory strike to remove Figures from the venire panel. We affirm.

Our review of the trial court's denial of Thurman's *Batson* challenge is limited to determining whether it is clearly erroneous. *State v. Daniels*, 865 S.W.2d 400, 402 (Mo.App.1993); *State v. Pullen*, 843 S.W.2d 360, 362–63 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 200, 126 L.Ed.2d 158 (1993). Clear error is established only when this court is left with a "definite and firm conviction a mistake has been made." *State v. Hayden*, 878 S.W.2d 883, 884–85 (Mo.App. 1994).

In deciding whether the State's peremptory challenges were racially motivated, the reason given by the prosecutor is deemed race-neutral "unless a discriminatory intent is inherent in the explanation." *Pullen*, 843 S.W.2d at 362. "If the prosecutor articulates an acceptable [race-neutral] reason for the strike, the defendant is required then to show that the [S]tate's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated." *Id.*

In assessing whether the defendant has met his burden of proof, the "chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *Parker*, 836 S.W.2d at 939. In particular, the trial court may take into account the demeanor of the excluded venireperson. *Id.; Daniels*, 865 S.W.2d at 401–02. Moreover, the State's failure to use its strikes against venirepersons of a racial minority and the presence of a racial minority on the defendant's jury are both relevant factors for consideration to the extent they indicate that race was not the prosecutor's motive for the challenged strikes. *Parker*, 836 S.W.2d at 940. If the defendant fails to sustain his burden of proving the reasons given were pretextual, there is no reversible error. *State v. Ford*, 867 S.W.2d 681, 683–84 (Mo.App.1993).

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

At the hearing on remand, the lead prosecuting attorney articulated her reasons for striking Figures based on her handwritten notes and independent recollection of the jury selection process, as well as the jury questionnaire completed by Figures. Figures apparently said nothing during the voir dire process. However, the prosecutor said she remembered very clearly and wrote down in her notes that Figures, who was seated in the front row of the jury box, "appeared hostile looking" and was "staring" at her and the assistant prosecutor in an antagonistic manner while they were questioning the panel. The prosecutor also recalled that the responses Figures made on his juror questionnaire raised questions in her mind about his educational and employment background.[2] The record also shows that only one of the State's six peremptory challenges was used to exclude an African–American. *Thurman*, 887 S.W.2d at 406. In fact, the selected jury ultimately consisted of five blacks and seven whites drawn from a twenty-four person venire panel of six blacks and eighteen whites. *Id.*

The reasons given by the prosecutor for striking Figures were not inherently discriminatory. Thus, the burden then shifted to Thurman to demonstrate that the State's rationale was only a pretext and that Figures' removal was in fact racially motivated. This Thurman failed to do. At the hearing, Thurman's counsel simply said she did "not believe" that Figures' alleged hostility was "a cognizant [sic] race neutral reason" for striking him. She did not specifically identify any similarly situated white jurors who were not struck and failed to support her conclusory statement with any supporting facts. Consequently, Thurman failed to establish error in the trial court's ruling. *See Ford,* 867 S.W.2d at 683.[3]

As to the other reasons given by the State for striking Figures, the record shows that Thurman's attorney similarly failed to make any convincing rebuttal argument to demonstrate that the State's rationale was a pretext. The exercise of peremptory challenges requires a subjective evaluation based upon a multitude of legitimate considerations, such as demeanor, ethnic background, employment, marital status, age, economic status, religion, and many other fundamental background facts. *State v. Hlavaty,* 871 S.W.2d 600, 604 (Mo.App.1994). "Prosecutors may still use horse sense and play hunches, so long as the factors on which they rely are racially neutral." *Id.* Merely arguing that such "hunches" are subjective, as Thurman's attorney did, is not enough to show they are pretexts to conceal underlying racial motivations. *State v. Mosely,* 873 S.W.2d 879, 883 (Mo.App.1994).

Considering the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case and our deferential standard of review, we do not believe the trial court's finding that the strike of venireperson Figures was not racially motivated is clearly erroneous. The trial court's order denying Thurman's *Batson* challenge is therefore affirmed.

All concur.

---

2. Figures was employed as a janitor at the time of Thurman's trial and apparently had trouble spelling his questionnaire responses correctly.

3. At the hearing, Thurman's attorney complained she was at a "complete disadvantage" on this issue since the State made no formal record of any staring or other hostile behavior by Figures during voir dire. While this problem is undoubtedly part of the reason *Parker* requires race-neutral reasons to be given while jury selection is still in progress, the admittedly unusual procedural posture of this case does not relieve Thurman of his burden to convince the trial court that the reasons advanced by the State were pretextual and the strikes were racially motivated. *See State v. Tankins,* 865 S.W.2d 848, 852 (Mo.App. 1993) ("In weighing the [*Parker* ] factors, the trial court should bear in mind that the burden of persuasion remains at all times with the defendant.") Furthermore, the handwritten notes prepared by the prosecuting attorney during voir dire are certainly some credible evidence upon which the trial court could have found that Figures did indeed act as claimed by the State.