**STATE of Missouri, Respondent,**

v.

**Vinson DAVIS, Appellant.**

**Nos. WD 51166, WD 52264.**

Missouri Court of Appeals,
Western District.

Dec. 24, 1996.

Jarrett Aiken Johnson, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for respondent.

SPINDEN, Judge.

A jury found Vinson Davis guilty of first degree robbery and armed criminal action. On appeal, he charges the circuit court with five errors: (1) overruling his *Batson*[1] objection; (2) failing to declare a mistrial; (3) overruling his motion for judgment of acquittal; (4) overruling his motion for new trial; and (5) denying his Rule 29.15 motion for postconviction relief. We affirm.

The jury convicted Davis of robbing Gerald Haas on June 5, 1994, while he was alone in a friend's Kansas City apartment. Davis was one of three men Haas let into the apartment when they told him they were there to retrieve a radio. The other two men were Anthony Boone and Antonio Slater. Boone told Haas that he was taking a "boom box" because it belonged to him. Slater told Haas that they would also take the television. When Haas resisted, Slater said that he would take anything he wanted and left with the television and two unopened packages of cigarettes sitting on it. Slater returned to the apartment with a rifle and ordered Haas to take everything out of his pockets. He asked Haas for money and then hit Haas in the back of the head with the rifle. Haas fell to the floor. Davis kicked Haas in the face and knocked out a tooth. Davis told Haas to remove his pants, and Haas did. Davis took a wallet, some change and a knife from the pants' pockets. Davis told Slater to shoot

---

**1.** Referring to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Haas, and Slater aimed the rifle at Haas. Haas jumped up and leaped through a closed window. Breaking through the glass, Haas landed on the sidewalk below, fracturing a leg and an arm. Haas limped to Belmont Street before collapsing and crawling to the sidewalk. He screamed for help. Slater, carrying the rifle, approached Haas. A neighbor telephoned 911. Slater saw the neighbor watching the incident and fired the rifle into the air.

Police later apprehended Davis and Slater in the area and returned them to the scene where several persons identified them. Officers found a shell casing in the area from a rifle of the style used by Slater.

After a jury convicted Davis and the circuit court sentenced him as a prior offender to 10 years in prison on the robbery count and three years on the armed criminal action, to run consecutively, Davis filed a Rule 29.15 motion for post-conviction relief accusing his trial attorney of ineffective assistance. The circuit court denied his motion without an evidentiary hearing. Davis appeals his convictions and the denial of his Rule 29.15 motion for postconviction relief. We have consolidated the appeals.

■ In his first point, Davis contends that the circuit court erred in overruling his objection to the state's dismissing a black venire person. Davis claims that he made a *prima facie* showing of racial discrimination and that the state's reasons for dismissing the venire person were pretextual.

To make a sufficient *Batson* objection, a defendant must make a *prima facie* showing that he is a member of a cognizable race and that the state used its peremptory challenges to remove others of his or her race from the venire panel. *State v. Parker*, 836 S.W.2d 930, 933 (Mo. banc), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). If the defendant makes such a showing, the state must give race-neutral reasons for its peremptory strike. If the prosecutor offers a sufficient explanation, the circuit court

should deem the defendant's *prima facie* case to be rebutted, and the defendant must show that the prosecutor's explanation was merely pretextual to hide a racial motivation. *Id.* The circuit court has much discretion in determining whether a defendant has made such a showing. *State v. McGuire*, 892 S.W.2d 381, 384 (Mo.App.1995). We use a "clearly erroneous standard" to judge the circuit court's determination. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989).

When Davis objected to the state's using a peremptory strike to dismiss a black venire person, the prosecutor explained her motive:

> His uncle was incarcerated and prosecuted by Jackson County. He's young and single. We struck everyone who's young, in their twenties and single. Also, [two others] fall into that category and we struck them as well. And the last reason, is because he was slouching in this chair most of the time. I could barely see him.

Defense counsel said that he regarded the first reason as pretextual because two other venire members who had indicated that they had relatives in jail were not dismissed. He added, "As far as the body language, I can't comment on that. Unfortunately, I was seated with my back toward that juror, so I don't know if that is pretextual or not." The prosecutor responded that she struck only one of the three venire members who had relatives in jail because the other two did not indicate that the Jackson County prosecutor had prosecuted the cases against their relatives. The prosecutor also said that the other venire members who had relatives in jail had said that they did not believe their relatives were falsely convicted, whereas the struck juror said that he had no opinion on that issue.

The circuit court found that the prosecutor's explanation for dismissing the venire person was racially neutral and upheld the peremptory strike. The circuit court noted that although other venire panelists had relatives in jail, the prosecutor had provided

additional reasons for striking the one.[2]

We affirm the circuit court's determination. Davis failed to meet his burden of showing that the state's explanation was pretextual. His only argument at the *Batson* hearing was that other venire members had relatives in jail and were not dismissed. As the prosecutor explained, the dismissed member was the only one who indicated that his uncle had been prosecuted by Jackson County; moreover, the prosecutor gave additional reasons—the venire member's age, marital status, and demeanor. The prosecutor also pointed out that two similarly-situated white venire members had been dismissed.

■ Age, demeanor and marital status are proper factors for the state to consider in using its peremptory challenges. *State v. Blunk,* 860 S.W.2d 819, 821 (Mo.App.1993). Defense counsel did not rebut these reasons. We find no basis for finding the circuit court's determination to be clearly erroneous; therefore, we deny the point.

■ In his second point, Davis complains that the circuit court did not declare, *sua sponte,* a mistrial after the prosecutor referred to police reports during closing argument which Davis claims were not in evidence. The prosecutor said:

Jerry Haas was consistent from the start. He made the statement at the scene, and his statement at the scene, basically they're concerned with identification. [The police] are trying to catch these guys. [The police] found out where [the perpetrators] were going, the police are trying to get a description of the robbers, a description of the car, and that's what they're concerned with, and he makes that consistent description right from the start. There were three of them is what he says. He didn't say there were two guys and one came up briefly to get a cigarette.

He makes another police statement in the emergency room. This is not a written statement, as he testified. It's not a chance where he got to go over all the words and sign it. They talked to him in the emergency room, just enough to find out what had happened. And the only inconsistency that the defense could bring out from that was, didn't Slater say he was going to kill you. "So, well, maybe he said he was going to kill me. I don't remember that. I remember this defendant saying, 'bust a cap on him.'" That was the only inconsistency. There were no inconsistencies in the reporting of this and if they were there, they would have brought them out.

Unfortunately, the police reports are hearsay and you won't be able to get an opportunity to see them or read them. But Mr. Haas testified from the witness stand and everything was consistent with all the police reports.

Davis claims these remarks prejudiced the jury and violated his right to a fair trial and due process rights and that the circuit court should have declared a mistrial because the remarks bolstered the victim's credibility.

Davis did not object at trial; therefore, he did not preserve the issue for our review. He requests, however, our review of the issue as plain error under Rule 30.20.

■ The Supreme Court has instructed that "court[s] should rarely grant relief on assertions of plain error as to closing argument[.] This is because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Moreover, errors committed during closing argument do not justify plain error relief unless they had a decisive effect on the jury. *State v. Clifford,* 815 S.W.2d 3, 8 (Mo.App. 1991).

We do not discern plain error here. Davis had tried to impeach Haas with his purport-

**2.** One black person remained on the jury after the venire person was dismissed.

edly inconsistent statements to the police. The prosecutor had a right to argue that the purported inconsistencies were not truly inconsistent or were insignificant. We make no more of the prosecutor's argument than this.

Even if the remarks had been improper, however, Davis failed to demonstrate that the challenged remarks had a decisive effect on the jury or that the outcome of the trial would have been different. We discern no merit in this point.

Davis also claims that the motion court clearly erred when it denied his motion for post-conviction relief in which he accused his trial attorney of ineffective assistance. He claims that his attorney should have objected to the state's closing argument set out above.

■ Matters raised and considered under the plain error standard on direct appeal cannot be relitigated under the guise of ineffective assistance of counsel in a post-conviction proceeding. *State v. Clark,* 913 S.W.2d 399, 406 (Mo.App.1996). A finding that no plain error occurred with regard to a claim raised on direct appeal establishes a finding of no prejudice under the *Strickland*[3] test. *Id.*

Nonetheless, his claim would fail as meritless. The circuit court ruled that the prosecutor's closing argument was not improper and resulted in no prejudice because the prosecutor merely was making a reasonable inference that had Haas been any more inconsistent in his testimony, compared with what he told police, Davis would have raised it. The circuit court concluded that defense counsel's failure to object did not demonstrate incompetence; that it was more likely a function of trial strategy. These findings are not clearly erroneous.

Davis also claims that the trial court erred in overruling his motion for new trial on the ground that the state did not disclose Haas'

medical records before trial. He claims that had the state disclosed the medical records, he would have had an opportunity to determine whether Haas was intoxicated or under the influence of drugs when he was beaten and robbed. This, Davis argues, would have helped him ascertain whether Haas' memory was impaired.

■ Before trial, Davis filed a motion for additional discovery requesting Haas' medical records pursuant to Rules 25.03(A)(5) and 25.04.[4] Rule 25.03(A)(5) says:

Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

. . . .

(5) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons[.]

In its suggestions opposing Davis' motion, the state asserted that Davis was not entitled to the records because the state had not endorsed as witnesses anyone who may have treated Haas or prepared his medical records. Before trial, the prosecutor confirmed that the state had given Davis all of the information that it had and that it did not have Haas' medical records.

Rule 25.03 does not require the state to disclose records which it does not have. *State v. Harding,* 734 S.W.2d 871, 873 (Mo. App.1987). The circuit court, therefore, was not required to order the state to provide medical records. Davis' point again lacks merit.

■ In his final point, Davis claims the circuit court erred in overruling his motion for judgment of acquittal because the state did not present sufficient evidence to support

---

**3.** See *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

**4.** Davis does not address Rule 25.04 in his brief on appeal.

his convictions. He claims that the state did not prove that he forcibly stole property as required by § 569.020, RSMo 1994.

In reviewing the sufficiency of evidence, we view it in the light most favorable to the state and disregard all evidence to the contrary, and we limit our determination to whether the jury could have found the defendant guilty beyond a reasonable doubt. *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995). We do not weigh the evidence or determine the credibility of witnesses. *State v. Middleton,* 854 S.W.2d 504, 506 (Mo.App. 1993).

Davis was charged with first degree robbery and armed criminal action. Pursuant to § 569.020, "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime ... [i]s armed with a deadly weapon[.]"

Three witnesses identified Davis as a person who was at the crime scene. Haas identified Davis as one of the three men who entered the apartment. He said that one of the men took a television from the apartment and returned with a rifle. Haas said that the man asked him whether he had any money and ordered him to remove everything from his pockets. The man, Haas said, struck Haas with the rifle and knocked him to the floor. Davis removed items from his pants' pockets, Haas said, and several of Haas' personal items were stolen during the robbery. Haas said that Davis appeared to be the one in charge during the robbery. After police apprehended Davis, two other persons identified Davis as one of the persons at the scene.

This was sufficient evidence from which the jury could have found Davis guilty of first degree robbery. Because the crime was committed with the use of a rifle, the evidence also supported Davis' conviction for armed criminal action.

We affirm the judgment of conviction and the denial of Davis' motion for postconviction relief.

SMART, P.J., and ELLIS, J., concur.